UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV324-R

| | |
|---|---|
| HOWA TRADING, LLC, )<br>TIFFANY TRADING, LLC, and )<br>MURTENSEE TRADING, LLC )<br> )<br>Petitioners )<br> )<br>v. )<br> )<br>UNITED STATES OF AMERICA, )<br>DEPARTMENT OF THE TREASURY – )<br>INTERNAL REVENUE SERVICE )<br> )<br>Respondent. )<br> ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Petitioners' "Petition to Quash Summonses" filed August 09, 2007 (document #1); and the "United States' Motion to Deny Petition to Quash and for Enforcement of Summons" filed November 08, 2007 (document #14). The Petition and Motion have been fully briefed; see "Petitioners' Response To IRS's Motion to Deny and Enforce" filed December 6, 2007 (document #18); "United States Reply Brief" filed December 11, 2007 (document #19); and "Petitioners' Surreply to IRS's Motion to Deny and Enforce" filed December 17, 2007 (document #21).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). Following a hearing on May 28, 2008, the subject Petition and Motion are now ripe for determination. Having carefully considered the arguments of the parties and applicable authority, the Court will deny the "Petition to Quash Summonses" and will grant the United States' "Motion ... for Enforcement of Summons."

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Petitioners are Illinois limited liability companies that primarily do business in Brazil. The Internal Revenue Service is examining losses claimed by the Petitioners and other taxpayers based on accounts receivable purchased from creditors in Brazil. The underlying transactions are commonly referred to as Distressed Asset and Debt ("DAD") tax shelters. DAD tax shelters were the subject of an IRS Coordinated Issue Paper dated April 18, 2007.

The IRS examinations of the DAD tax shelters has proceeded essentially on two tracks: (1) to determine the correctness of returns of entities, including the Petitioners, which acquired the accounts receivable and initially reported the losses; and (2) to determine the correctness of the returns of U.S. taxpayers claiming those losses as offsets to otherwise taxable income. The entities acquiring the accounts receivable and marketing the tax losses were the brain child of John E. Rogers, an attorney who also has an MBA in international finance. The IRS represents that taxpayers claimed losses related to these transactions of $39,000,000 in 2003 and approximately $119,000,000 in 2004, the two years currently being examined.

The subject Petition and Motion pertain to IRS Summonses served on Christopher H. Brown, a taxpayer residing in the Western District of North Carolina. Specifically, Mr. Brown was summoned to appear for examination under oath on August 29, 2007 and to produce the following documents:

> All documents regarding legal advice or tax advice in connection with [his] participation in [petitioners and non-petitioner entities], and/or its activities, the legal or tax consequences of your participation, and/or tax return positions to be taken by [petitioners and non-petitioner entities], or [him] in connection with [his] participation in [petitioners and non-petitioner entities], and/or its activities.
>
> All documents discussing or purporting to describe the anticipated tax benefits, or lack thereof, of [petitioners and non-petitioner entities], and/or its activities,

including but not limited to documents relating to advice that recommended that [he] should not participate in [petitioners and non-petitioner entities], and/or its activities or claim any tax benefits with respect thereto.

All engagement letters, representation letters, agreements, and correspondence relating to legal, professional, management, accounting or tax advice relating to [petitioners and non-petitioner entities], and/or its activities.

All documents, including but not limited to engagement letters, representation letters, agreements, invoices, billing records, fee allocations, and correspondence related to any fees for legal, professional, management, accounting and tax advice and assistance incurred by [him] and/or any entity controlled by [him] in connection with [petitioners and non-petitioner entities], and/or its activities.

All minutes, notes, correspondence, emails, calendar entries, and other recordings relating to or reflecting meetings, conferences and telephone conversations in which [petitioners and non-petitioner entities], and/or its activities was discussed.

All documents showing payment of any funds, including but not limited to fees, paid or received by any party in connection with [petitioners and non-petitioner entities], and/or its activities.

"Petition to Quash Summonses" at 3 (document #1).

Rather than appearing for examination or producing the summoned documents, Mr. Brown apparently caused, or acquiesced in, the filing of the subject Petition to Quash.

The dispute over the IRS Summonses in this district is one of at least fourteen similar disputes with taxpayers in other districts. In every one of these disputes which has been resolved by the respective courts the petitions to quash have been denied and the IRS motions to enforce have been granted. See Bodensee Fund, LLC v. Unites States Department of Treasury, 2008 WL 1930967 (E.D. Pa. 2008); Ironwood Trading, LLC v. United States, 2008 WL 817066 (M.D. Fl 2008); Lyons Trading, LLC v. United States, 2008 WL 361533 (E.D. Tenn. 2008); Sterling Trading, LLC v. United States, No. 8:07-915 (C.D. Ca. 2008); Good Karma, LLC v. United States, No. 07-2697 (N.D. Ill. 2008); Rook Trading, LLC v. United States, No. 1:07-651 (W.D. Mich. 2008); and

3

Tiberoius Trading, LLC v. United States, No. 1:07-718 (W.D. Mich. 2008).

The Petitioners argue in the instant Petition, as similarly situated petitioners have argued in attempting to quash similar or identical summonses in other districts, that the summonses issued to Mr. Brown were "part of a nationwide harassment effort on the part of the IRS"; that the IRS has already sought and obtained a large number of documents in response to Information Document Requests (IDRs, IRS Form 4564); and that Petitioners have made every effort to comply with the IRS' requests, even to the point of producing "identical information to each IRS agent and often [being] required to resubmit information repeatedly to the same IRS agent."  The Petitioners further contend that the IRS has requested documents "too numerous or burdensome for total compliance"; that the Government persists in spite of knowing that transactions at issue are not abusive tax shelters; that the IRS is improperly using the Summonses as "a pre-litigation discovery tool"; that compliance with IRS requests have already cost Petitioners a great amount and have hindered their "ability to conduct business, raise capital and ultimately sell off – or go public with – their business"; that certain IRS  administrative procedures have not been followed; and that issuance of Summonses are "an improper attempt by the IRS to extend the statute of limitations."

The IRS, of course, denies any improper motive or action, noting that the summoned taxpayer (Mr. Brown) directly or indirectly owns 96.04% of Petitioners Murtensee Trading, LLC and Tiffany Trading, LLC, the losses of which were passed on to Mr. Brown and reported on his federal income tax returns.[1] According to the Internal Revenue Service's Coordinated Issue Paper ("CIP") dated April 18, 2007, losses attributable to a DAD tax shelter may be disallowed due to: (1) failure to substantiate the basis of distressed assets; (2) failure to make a contribution within the meaning of

---

[1]The IRS initially believed Mr. Brown had an ownership interest in Howa Trading, LLC, but has since discovered that he does not and has withdrawn the Summons issued to Mr. Brown in regard to Howa.

Section 721 of the Internal Revenue Code ("IRC"); (3) abuse of Subchapter K of the IRC; (4) the "step-transaction doctrine"; (5) a lack of economic substance; (6) the "substance over form doctrine"; and/or (7) a lack of profit motive. Moreover, if claimed losses are disallowed, in order to determine whether accuracy-related penalties should be assessed, the IRS must determine whether a taxpayer reported the DAD losses with "reasonable cause" and in "good faith."

Noting the multiple bases for disallowance of DAD shelter losses, and the relevance of "reasonable cause" and "good faith" in determining whether penalties should be assessed if deductions for losses are disallowed, the Government responds and contends that the summoned taxpayer (Mr. Brown, the majority owner of Tiffany Trading, LLC and Murtensee Trading, LLC) is likely to have documents and information relevant to the IRS ongoing examinations. The Government denies, through the Declaration of Revenue Agent Larry Weinger dated November 6, 2007, any intention to harass the Petitioners or any other improper purpose. Specifically, Agent Weinger denies stating or implying that the Summonses were "merely a tool to obtain discovery before litigation"; and avers that the summoned information was, in fact, "to determine the correct tax liability of Petitioners Tiffany and Murtensee"; that statements made to Petitioners' lawyers regarding the untimeliness of certain responses were statements of law and fact, not "threats"; and that offers to settle with taxpayers benefitting from the subject deductions were in accordance with IRS Announcement 2005-80, 2005-46 I.R.B. 967, and were otherwise proper. Finally, the Government denies that the IRS intended to extend, or actually extended, any statute of limitations, it being the Petition to Quash, not any action by the IRS, which tolled the statute of limitations. In any event, the Government contends that there was no need to toll the statute of limitations in regard to either entity.

5

## II. CONCLUSIONS OF LAW

### A. Prima Facie Showing

Section 7602(a) of the Internal Revenue Code (26 U.S.C.) authorizes the Internal Revenue Service (hereafter "Service" or "IRS") to issue an administrative summons for "the purpose of ascertaining the correctness of any return . . . [or for] determining the liability of any person for any internal revenue tax . . ." Specifically, section 7602(a), in relevant part, authorizes the Service:

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; [and]

(2) To summon . . .
any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary [of the Treasury] may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

The United States may seek to compel compliance with a summons in the context of an action brought to quash the summons. See 26 U.S.C. §7609(b)(2)(A). In such a case, the United States has the initial burden of making a prima facie showing that:

(1) the investigation has a legitimate purpose;

(2) the summoned materials are relevant to that purpose;

(3) the information sought is not already within the IRS' possession; and

(4) the IRS followed the administrative steps required by the Internal Revenue Code.

United States v. Powell, 379 U.S. 48, 57-58 (1964); see also United States v. LaSalle Nat'l Bank, 437 U.S. 298, 318 (1978); Alphin v. United States, 809 F.2d 236, 238 (4th Cir. 1987), cert. denied, 480 U.S. 935 (1987). This showing can be, and typically is, made through the affidavit or sworn

6

declaration of the IRS officer who issued the summons. See, e.g., Alphin, 809 F.2d at 238; United States v. Garden State National Bank, 607 F.2d 61, 68 (3d Cir. 1979); In re Newton, 718 F.2d 1015, 1019 (11th Cir. 1983); United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993); and United States v. Will, 671 F.2d 963, 966 (6th Cir. 1982). Here, the required showing has been made through the Declaration of Agent Weinger.

### 1. **Legitimate Purpose**

An administrative summons must be issued "in good-faith pursuit of the congressionally authorized purposes of § 7602." United States v. LaSalle Nat'l Bank, 437 U.S. 298, 318 (1978). As noted above, an administrative summons may be issued for "the purpose of ascertaining the correctness of any return" or for "the purpose of determining the liability of any person for any internal revenue tax." 26 U.S.C. §7602(a). In the present case, the IRS is examining the correctness of tax returns filed by Tiffany and Murtensee, limited liability companies (LLCs) filing Forms 1065 (Return of Partnership Income). These entities do not have entity level income tax liabilities. Rather, their income, deductions, gains and losses flow through to the individual owners. The IRS is also interested in determining the correctness of returns filed by and the correct tax liabilities of the individual owners, including Mr. Brown.

The Petitioners conclusively contend that there is no "legitimate purpose" for the IRS's Summonses because "[t]he transactions at issue are not abusive tax shelters." As the Government correctly responds, however, the IRS is not required to demonstrate that the transactions are abusive tax shelters before obtaining information or sworn testimony to determine the correctness of a return. In Powell, for example, the Supreme Court noted that the Service can issue a summons to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it

is not." 379 U.S. at 57, quoting United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950). Accord United States v. White, 853 F.2d 107, 116 (2d Cir. 1988) ("The function of the district court and of this Court in an enforcement proceeding is not to test the final merits of the claimed tax deduction, but to assess within the limits of Powell whether the IRS issued its summons for a legitimate tax determination purpose.")

On these facts, therefore, the IRS has established that the Summonses were for a "legitimate purpose."

### 2. Relevance to the Investigation of Petitioners' Tax Returns

The second element of the Powell test requires that a summons seek information that may be relevant to the legitimate purpose of the underlying investigation. In United States v. Arthur Young & Co., 465 U.S. 805 (1984), the Supreme Court announced the controlling – and highly deferential – standard of "potential relevance" in summons enforcement cases:

> As the language of § 7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. Cf. Fed. Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS, see United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.E.2d 112 (1964); the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.

465 U.S. at 814 (emphasis in original). The Courts of Appeals have interpreted this standard as requiring that the requested documents need "only be 'relevant' in the sense that they have the potential to shed some light on any aspect" of the taxpayer's return. 2121 Arlington Heights Corp. v. I.R.S., 109 F.3d 1221, 1224 (7th Cir. 1997); see also Tedder v. United States, 77 F.3d 1166, 1168

(9th Cir. 1996) (the Service need only show a "realistic expectation rather than an idle hope that something may be discovered") .

The subject Summonses request testimony and documents that generally fall into four categories, all concerning the "distressed debt" transactions that resulted in reported tax losses by Petitioners during tax years 2003 and 2004: 1) documents related to the anticipated tax benefits of those transactions; 2) engagement letters, invoices, and billing records for legal, management, or tax advice; 3) correspondence and notes regarding discussions with the Petitioners; and 4) documents related to legal or tax advice with respect to those transactions. As the principal investor in the entities being examined (a.k.a. "the Petitioners"), Mr. Brown could reasonably be expected to have information about the accounts receivable transferred to the limited liability companies, the value of the receivables at the time of contribution and thereafter, the entities' motive for engaging in the transactions, and the business purpose of those transactions.

Mr. Brown may also have possession of the items sought by the third, fourth and sixth requests, which seek production of engagement letters and invoices for professional advice relating to the income and expenses of the entities under examination. Business relationships, service fees, correspondence, and payments directly relate to the Petitioners' income and expenses, and therefore are certainly relevant to "the correctness" of the subject returns. Mr. Brown likewise could reasonably be expected to have items sought by the fifth request (see p. 3, supra), which are at least "potentially relevant" to the transactions the IRS is currently examining.

Finally, Mr. Brown could reasonably be expected to have information relevant to whether individuals and entities participating in the transactions exercised reasonable care and otherwise acted in good faith which, if the deductions are disallowed, in turn governs whether penalties should

be imposed. Such a determination requires an examination of a variety of factors, including the taxpayer's reliance on the opinion of an advisor or advisors, the independence of the advisor(s), the nature of the advice given, and whether the advice was based on an accurate representation of the facts.

On these facts, therefore, the Court concludes that the summoned testimony and documents were relevant to the IRS's legitimate examination of the subject transactions.

### 3. IRS Possession of Requested Information

Agent Weinger credibly avers that the Service does not possess the summoned information, although he concedes that the Petitioners, and certain third parties, have provided documents and information in the course of this and other examinations. However, as the Government correctly notes, despite their claim that "[m]uch, if not all, of the information sought is already in the IRS's possession," Petitioners provide no specifics as to which, if any, of the summoned documents have been produced.

The Government is also correct that even if the Petitioners have produced certain of the requested documents, the IRS is entitled to review relevant records of the same transactions maintained by third-party recordkeepers in order to ascertain whether the information in each set of documents is consistent. Accord Alphin, 809 F.2d at 238 (petitioners' general assertion that much of the information sought has been produced simply does not meet their "heavy burden" for challenging a summons); and Cohen v. United States, 306 F.Supp. 2d 495, 504 (E.D. Pa. 2004) (IRS not limited to one party's production of records; rather, it may seek similar information from a variety of sources to develop a complete picture of relevant transactions).

For these reasons, the Court concludes that the Government has made its required showing

that the subject information is not already in its possession.

4. **Administrative Procedures**

Aside from a general allegation that "the administrative steps required by the IRC have not been followed," the Petitioners allege only that the Service failed to give proper notice of the Summonses to their "designated representative," as required by section 7602 of the Internal Revenue Code.[2] The Petitioners cite 26 C.F.R. § 601.506(a) for the proposition that the Service must give such notice, but fail to note that § 601.506(a) also provides that "[f]ailure to give notice or other written communication to the recognized representative <u>will not affect the validity of any notice or other written communication delivered to the taxpayer</u>" (emphasis added). See also <u>Smith v. United States</u>, 478 F.2d 398 (5th Cir. 1973) (rejecting argument that notice was invalid because it was not sent to taxpayer's attorney).

Accordingly, where the Petitioners were given actual notice, and have made no credible showing of prejudice, the Court concludes that minor technical deviance from procedure is an insufficient basis for the quashing of an otherwise legitimate IRS summons.

B. **Petitioners' "Heavy Burden"**

Once the United States makes a <u>prima facie</u> showing, as it has here, the burden shifts to the Petitioners to prove that enforcement of the Summonses would be an abuse of the court's process. <u>Powell</u>, 379 U.S. at 58. The threshold for meeting this burden is steep; indeed, the law is clear that while the burden on the United States to make a <u>prima facie</u> showing is slight, the burden on Petitioners to demonstrate abuse of process is "a heavy one." <u>Alphin</u>, 809 F.2d at 238. Accord

---

[2]Because Brown is a partner in the petitioners, the Service need not provide the notice provided in section 7602 before issuing the summonses. <u>See</u> 26 C.F.R. 301.7602-2(c)(3)(ii), examples 6(a) & (b).

11

Crystal v. United States, 172 F.3d 1114, 1144 (9th Cir. 1999); United States v. Feminist Federal Credit Union, 635 F.2d 529, 530 (6th Cir. 1980); and United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981).

To meet their heavy burden, the Petitioners must do more than simply call into question the United States' prima facie showing; they must disprove "the actual existence of a valid civil tax determination or collection purpose." Alphin, 809 F.2d at 238 (citation omitted). See also Liberty Financial Services v. United States, 778 F.2d 1390, 1393 (9th Cir. 1985) (to meet their heavy burden petitioners seeking to quash IRS summons must allege specific facts and evidence to support allegations).

As a preliminary matter, as the Government persuasively argues, the Petitioners' general and largely conclusory contentions are not supported by facts in their affidavits. Nor, to the extent the Petitioners have made factual allegations, are the alleged facts – even if taken as true – sufficient to meet the "heavy burden" required to quash an IRS summons.

### 1. Pre-Litigation Discovery

The Petitioners allege, for example, that the Summonses were issued as a "pre-litigation discovery tool" in an attempt to secure information that would not otherwise be available through traditional discovery. The Government credibly responds that the Petitioners mischaracterize statements made by an IRS Agent regarding the Government's decision to litigate, finding a nefarious inference in an agent's contact with district counsel.

As the Government also urges, the issuance of an FPAA is not tantamount to "deciding to litigate" the tax issues involved. As the Second Circuit observed in PAA Management, Ltd. v. United States, 962 F.2d 212, 219 (2d Cir. 1992):

In short, an FPAA appears to be "final" under the Code only in the sense that the IRS generally may not send more than one FPAA. The FPAA is not "final" in the sense that its issuance necessarily obviates the need for further information, brings the curtain down on the IRS's administrative or investigative role, or muzzles the IRS from requesting that the court invoke its authority finally to determine partnership items.

The Summonses in this case simply and straightforwardly seek testimony and documents from a person likely to be in possession of responsive documents and information. Whether the information could be obtained with other discovery tools in a judicial proceeding is immaterial. To the contrary, the Service is permitted to use the summons process to gather information in furtherance of examinations, when (as here in the case of Tiffany) a summons was issued before an FPAA was issued. Nor is the Court persuaded that the IRS must cease and desist in any further examination once an FPAA is issued. See PAA Management, 962 F.2d at 219 (overturning an order quashing summonses issued before the FPAA was issued but requiring responses following the FPAA's issuance, and recognizing that an IRS examination may continue beyond the issuance of the FPAA). In that case, the Second Circuit stated:

> [W]e cannot agree with the suggestion that the prospect of an eventual court challenge by a taxpayer or similar entity to an IRS determination, and the likelihood that otherwise legitimate and relevant information sought by the IRS might eventually be discovered in that proceeding, deprives the IRS of its authority to summons the information at an earlier point in time in the process.

PAA Management, 962 F.2d at 219.

In short, the Petitioners cannot establish abuse of process or bad faith by allegations that the Summonses were issued after a point in time when future litigation is likely and/or after an FPAA has been issued.

## 2. Extension of Statute of Limitations

Petitioners next argue that the Summonses should be quashed because they are an attempt by the Service to extend the relevant statute of limitations in which to issue FPAAs. As the Government responds, however, this argument ignores the fact that it was the filing of the Petition To Quash by the Petitioners, not the issuance of an IRS summons, that tolled the statute of limitations. In addition, the Service has already issued an FPAA for petitioner Tiffany, clearly mooting the statute of limitations issue in regard to one of the Petitioners.

For these reasons, the Court must conclude that the Petitioners' statute of limitations argument must likewise be rejected.

## 3. Harassment

Petitioners argue that the Summonses should be quashed because they are part of a nationwide crusade "to harass and intimidate a group of legitimate international business entities and their creator, John Rogers." As discussed above, and as supported by Agent Weinger's Declaration, however, the record establishes to the contrary that the IRS properly issued the Summonses to determine the correctness of returns the Petitioners filed – and ultimately the correctness of the returns and tax liabilities their taxpayer/owners filed. Petitioners' unsworn allegations that the Service's agents made statements suggesting otherwise are simply not credible. In any event, the Petitioners' allegations are facially insufficient to overcome the Government's showing of a legitimate purpose in issuing the Summonses in that it is the Service's "institutional posture," not the statement or intent of any individual agent, that determines whether a summons was issued in

bad faith. See, e.g., LaSalle Nat. Bank, 437 U.S. at 315-16.[3]

In order to prevail on this point – that the Summonses should be dismissed because they were issued to harass the Petitioners – the Petitioners must disprove the existence of a valid purpose by the Service in issuing the Summonses. See LaSalle Nat. Bank, 437 U.S. at 316. Under this high standard, Petitioners' unsupported allegations that individual agents made statements that Petitioners believe are inconsistent with a legitimate purpose are clearly inadequate. Accord Alphin, 809 F.2d at 238 (party challenging summons must allege specific facts supported by affidavits); Garden State Nat. Bank, 607 F.2d at 70-71 (conclusory allegations insufficient to establish absence of legitimate purpose); 2121 Arlington Heights v. I.R.S., 109 F.3d at 1225-26 (sworn statement that a Service agent threatened to "ruin [the taxpayer's] business" if the taxpayer refused to settle insufficient to establish institutional bad faith on the part of the government); United States v. Norwest Corp., 116 F.3d 1227, 1234 (8th Cir. 1997) (rejecting argument that summons was issued to suspend statute of limitations where government demonstrated a legitimate purpose).

In short, the Petitioners' unsupported argument that the subject Summonses were issued for an illegitimate purpose does not satisfy its "heavy burden" to prove that enforcing the Summonses would be an abuse of process.

### 4. **Constitutionality**

Finally, the Petitioners argue that the subject Summonses should be quashed because they are unconstitutional on their face. Specifically, Petitioners contend that the Summonses constitute

---

[3] See also Crystal, 172 F.3d at 1150 (9th Cir. 1999) ("[E]ven if the motivation of the agent requesting a summons is suspect, the summons may nevertheless be enforced absent a showing that the improper motivation somehow 'infected the institutional posture of the IRS.'") (quoting 2121 Arlington Heights Corp. v. I.R.S., 109 F.3d 1221, 1226 (7th Cir. 1997)); Doe v. United States, 253 F.3d 256, 271-72 (6th Cir. 2001).

15

a deprivation of property without due process of law in violation of the Fifth Amendment to the Constitution, violate "separation of powers principles entrusting judicial review to Article III tribunals," and limit the right to petition the government in violation of the First Amendment. Even a cursory review of the relevant authority makes clear the absence of merit in these "shotgun" arguments.

First, the Supreme Court has, on many occasions, upheld the validity of summons enforcement procedures set forth in the Internal Revenue Code. See, e.g., Powell, 379 U.S. at 57-58; LaSalle, 437 U.S. at 318; Arthur Young, 465 U.S. at 814; United States v. Euge, 444 U.S. 707, 715-716 (1980); United States v. Bisceglia, 420 U.S. 141, 146 (1975); and the cases cited therein.

Petitioners' suggestion that the constitutional concept of separation of powers somehow immunizes the Summonses from judicial review is perplexing given the fact that 26 U.S.C. §7602(c)(1) requires the Service to provide notice of all third-party summonses to the relevant taxpayer, and that 26 U.S.C. §7609(b)(2) creates a specific statutory avenue for judicial review of internal revenue summonses. Indeed, as the Government observes, the very existence of this lawsuit belies petitioners' curious argument that judicial review is unavailable.

Nor is the Court aware of any authority in support of the Petitioners' First Amendment or due process arguments, which sound more in desperation than in reason or substance. Regarding the latter, it is clarion clear that due process is satisfied by the statutory process for judicial review of Internal Revenue summonses (as noted above). Accord Mollison v. United States, 481 F.3d 119, 125 (2d Cir. 2007); United States v. Gilleran, 992 F.2d 232, 233-34 (9th Cir. 1993); Romero v. Comm'r, 1998 WL 990584, at * 5 (E.D. Cal. 1998); Erickson v. Commissioner, 1996 WL 454931, at * 9 (D. Minn. 1996); and Chase v. United States, 1994 WL 644845, at * 3 (W.D. Mich. 1994).

## III. ORDER

**FOR THE FOREGOING REASONS, IT IS HEREBY ORDERED:**

1. The "Petition to Quash Summonses" (document #1) is **DENIED**.

2. The "United States Motion to Deny Petition to Quash and for Summary Enforcement of Summons" filed November 28, 2007 (document #14) is **GRANTED**.

3. All other Motions remaining in this proceeding (see documents ## 12 and 22) are **DENIED** and **DISMISSED AS MOOT**.

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Martin K. Reidinger.

**SO ORDERED.**

Signed: June 2, 2008

_Carl Horn, III_
Carl Horn, III
United States Magistrate Judge